UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

CASE NUMBER:

SMOOTHIE KING FRANCHISES, INC.

      Plaintiff,

v.

HARTAN ENTERPRISES, INC.,
MOHAMMAD H. DOSANI, and
TANWEER H. AHMAD,

      Defendants.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Smoothie King Franchises, Inc. ("SKFI") sues Defendants, Hartan Enterprises, Inc. ("HEI"), Mohammad H. Dosani ("Dosani"), and Tanweer H. Ahmad ("Ahmad") (collectively "Defendants"), and states:

1.    This is an action to enjoin Defendants' unauthorized use of SKFI's valuable trademarks and service marks in connection with the unlawful operation of a Store located in Sugar Land, Texas as an authorized SMOOTHIE KING® Store. Additionally, this is an action for breach of the Franchise Agreement for Defendants' failure to operate their SMOOTHIE KING® Store in accordance with the standards and specifications required by SKFI.

## THE PARTIES

2.    Plaintiff SKFI is a Louisiana corporation with its principal place of business in the State of Louisiana.

3.    Defendant HEI is a Texas corporation with its principal place of business in the State of Texas.

4.    Upon information and belief, Defendant Dosani is a citizen and resident of the State of Texas.

5.    Upon information and belief, Defendant Ahmad is a citizen and resident of the State of Texas.

## JURISDICTION AND VENUE

6.    SKFI operates and franchises stores throughout the United States.    SKFI's franchise operations are conducted and supervised from its headquarters located in Covington, Louisiana.    The parties have carried on a continuous course of direct communications by mail, e-mail and by telephone through SKFI's headquarters in Covington, Lousiana.

7.    The course of dealing between SKFI and its franchisees, including Defendants, shows that decision-making authority is vested in SKFI's headquarters in Covington, Louisiana.

8.    Defendants negotiated with SKFI in Covington, Louisiana for the acquisition of a long-term franchise agreement with the knowledge that they would benefit from their affiliation with SKFI.

9.    Defendants voluntarily entered into franchise relationships with SKFI which envisioned continuing and wide-reaching contacts with SKFI in Louisiana, including regulation of their franchised business from SKFI's headquarters in Covington, Louisiana.

10.    Defendants have purposefully availed themselves of the benefits and protection of Louisiana law by entering into a franchise agreement with SKFI which expressly provides that Louisiana law will govern any disputes among the parties.

11.    Defendants have breached contracts which were to be performed in Louisiana by failing to maintain and operate a SMOOTHIE KING® Store located in Louisiana in accordance with the standards and specifications established by SKFI as to cleanliness, health and sanitation.

Further, by using the SKFI Marks without authority to do so, Defendants have caused damage to SKFI at its headquarters in Covington, Louisiana.

12.     This Court has jurisdiction over this action based upon:

(a)     Section 39 of the Lanham Act, 15 U.S.C. 1121, and 28 U.S.C. 1331, 1337, and 1338 (a), for the claims arising out of Defendants' violations of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. 1114 and 1125(a);

(b)     28 U.S.C. 1338(b), and the doctrine of supplemental jurisdiction as codified in 28 U.S.C. 1367, for the claims arising out of Defendants' common law unfair competition and Defendants' breach of contract; and

(c)     diversity jurisdiction under 28 U.S.C. § 1332 (a)(1) for civil actions in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

13.     Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b) and the forum selection clause agreed to by the parties in their written agreements.

14.     Defendants have agreed in writing that in any litigation to enforce the terms of the Franchise Agreement between SKFI and Defendants, SKFI, as the prevailing party, shall be paid by Defendants all costs, including attorneys' fees, incurred as a result.

15.     SKFI has engaged undersigned counsel and has agreed to pay counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the agreements between SKFI and Defendants.

16.     All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

## THE SKFI MARKS

17.    To identify the source, origin and sponsorship of SKFI's facilities, products and services, SKFI has extensively employed, caused to be advertised and publicized throughout the United States certain distinctive symbols as trademarks and service marks (the "SKFI Marks"). SKFI was the first to adopt and use the SKFI Marks as trademarks and service marks, and all right, title and interest to the SKFI Marks and the design, decor and image of SMOOTHIE KING® Stores remain vested solely in SKFI.

18.    SKFI operates and franchises SMOOTHIE KING® Stores using the SKFI Marks on signs, menu boards, posters, uniforms, cups and other items, and in advertising to the public through television, radio and print media.

19.    Set forth below is an abbreviated listing of the SKFI Marks registered in the United States Patent and Trademark Office:

| Reg. No. | Mark | Issue Date |
|---|---|---|
| 1,874,101 | CARIBBEAN WAY | 1995 (renewed through 2014) |
| 2,832,936 | GLADIATOR | 2004 (renewed through 2014) |
| 2,948,514 | GLADIATOR | 2005 (renewed through 2015) |
| 2,709,982 | STRAWBERRY KIWI-BREEZE | 2003 (renewed through 2013) |
| 1,861,112 | POWER PUNCH PLUS | 1994 (renewed through 2014) |
| 1,825,363 | MUSCLE PUNCH | 1994 (renewed through 2014) |
| 1,845,979 | BE GOOD TO YOURSELF! | 1994 (renewed through 2013) |
| 2,036,826 | SMOOTHIE KING | 2007 (renewed through 2017) |
| 1,840,792 | SMOOTHIE KING | 1994 (renewed through 2014) |
| 3,542,738 | SMOOTHIE KING | 2008 (renewed through 2018) |
| 1,633,522 | SMOOTHIE KING HOME OF THE MUSCLE PUNCH | 1991(renewed through 2011) |

20.    The registrations of the SKFI Marks are currently in full force and effect, and SKFI has given notice to the public of the registration of the SKFI Marks as provided in 15 U.S.C. §1111.

21.    Pursuant to franchise agreements between SKFI and its franchisees, SKFI grants its franchisees a limited license and authority to use and display the SKFI Marks, but only in

such manner, and at such locations and times, as are expressly authorized by SKFI. In no event is a franchisee authorized to use the SKFI Marks after the expiration or termination of its franchise. Such unauthorized use is expressly prohibited under the terms of all SKFI franchise agreements, including Defendant's SMOOTHIE KING® Franchise Agreement with SKFI.

22.    SKFI's products bearing the SKFI Marks are offered and sold in interstate commerce.

23.    SKFI and its franchisees have spent millions of dollars in the United States and abroad advertising and promoting SKFI's stores, services and products.

24.    The substantial investment made in the SKFI Marks has resulted in valuable good will for the SKFI Marks and for the stores, products and services bearing those marks. SKFI products and services have met with popular approval and, as a result of SKFI's extensive sales, advertising, promotion and publicity, the public is familiar with the SKFI Marks. The products and services associated with the SKFI Marks are understood by the public to be produced, marketed, sponsored, supplied by and/or affiliated with SKFI.

## THE SMOOTHIE KING SYSTEM

25.    SKFI has developed a comprehensive store operating system for all SKFI franchisees in order to protect the image of SMOOTHIE KING® Stores and to ensure uniform, high quality standards. The detailed specifications and procedures of the "Smoothie King System" are set forth in SKFI's confidential operations manual, other manuals and other writings issued by SKFI from time to time, such as quality control requirements maintained on SKFI's intranet (the "Manuals").

26.    Every SKFI franchisee is required by its franchise agreement to operate its franchise in accordance with the specifications and procedures contained in the Franchise

Agreement, the Manuals or otherwise in writing. The Manuals and other writings set forth in detail the mandatory SKFI store operating standards, specifications and procedures, including rules governing areas such as food preparation and handling, cleanliness, health, sanitation, quality and speed of service. In addition to these strict quality, service and cleanliness requirements, the Manuals and other writings prescribe specified training procedures to ensure that these requirements are met. The Manuals and other writings are confidential SKFI documents which a franchisee is permitted to have only during the term of the franchise agreement.

27.    SKFI offers a broad range of services to its franchisees in order to monitor and assist a franchisee's compliance with these standards, including training for various levels of personnel. This enables SKFI to safeguard the integrity of SMOOTHIE KING® Stores, the SMOOTHIE KING® System and the SKFI Marks.

28.    Integral to SKFI's compliance and assistance program are periodic inspections and consultations undertaken by SKFI personnel specially trained to observe and advise in all areas of store operating procedure. Pursuant to SKFI's store visitation process, action plans are issued after a store inspection is conducted. These action plans serve as a training opportunity for the franchisee and as a quality assurance process for SKFI to ensure that critical quality, service and cleanliness standards are being met by the franchisee. Each SMOOTHIE KING® Franchise Agreement confers upon SKFI the right to enter the store premises to perform this vital function.

29.    As a result of its substantial expenditures of money and effort in developing and implementing the SMOOTHIE KING® System, SKFI has established a high reputation and a positive image with the public as to the quality of products and services available at SMOOTHIE KING® Stores, which reputation and image have been, and continue to be, valuable assets of

SKFI. SKFI strives to maintain that reputation through its careful selection of authorized franchise owners, facilities and locations and its careful supervision over the manner and quality of its store service.

## SKFI'S AGREEMENT WITH DEFENDANTS

30.    HEI owned and operated the store that is the subject of the instant action as a franchised SMOOTHIE KING® Store (the "Store") in accordance with the terms and conditions of a SMOOTHIE KING® Franchise Agreement (the "Franchise Agreement).

31.    The SMOOTHIE KING® Store's number, location, and the date of the Franchise Agreement are set forth below.

| Store No. | Store Location | Date of Franchise Agreement |
|-----------|----------------|------------------------------|
| SK Store # 329 | 5022 Hwy 90 A East Suite R Sugar Land, TX 77478 | January 28, 2005 |

## GUARANTY

32.    Pursuant to a written guaranty, Dosani and Ahmad jointly, severally unconditionally and irrevocably personally guarantied to SKFI the performance of each and every obligation of HEI ("Guaranty") under the Franchise Agreement.

## FRANCHISEE OBLIGATIONS

33.    Pursuant to the Franchise Agreement, HEI understood and acknowledged the importance of SKFI's standards of quality and service and the necessity of operating the Store in accordance therewith.

34.    The Franchise Agreement contains provisions obligating HEI to operate the Store in strict conformity with such methods, procedures, standards and specifications prescribed by SKFI as to service, cleanliness, health and sanitation.

35.     Under the Franchise Agreement, HEI further agreed that it would, among other things, maintain the Store in a good, clean, attractive and safe condition at all times.

## DEFAULT AND TERMINATION

### Default

36.     The Franchise Agreement contains provisions regarding default and establishing the parties' rights and obligations in the event of a default by the franchisee under the Franchise Agreement.  The relevant terms of the Franchise Agreement provide that if a threat or danger to the public health or safety results from the franchisee's operation of its store, the franchisee shall be in default and the Franchise Agreement, and all rights granted to the franchisee, shall terminate immediately upon written notice from SKFI.

37.     Defendants defaulted under the Franchise Agreement by operating the Store in a manner that constitutes a threat and danger to the public health and safety.  Specifically, Defendants observed, among other things, the following critical food safety and food quality issues at the Store during an SKFI Quality Assurance Inspection conducted on January 19, 2011: (1) the preparation table cooling mechanism was not operable such that fruit juices that exceeded maximum temperature allowance were being served by Defendants to consumers; (2) the walk-in cooler and walk-in freezer were not operable causing Defendants to serve juices and fruits above the required temperatures to consumers; (3) the ice machine contained mold; (4) Defendants were serving expired flavoring products in smoothies; (5) strawberries were improperly left to thaw in open areas subject to potential contamination such as bacterial growth; (6) there was no sanitizer available for use in the three compartment sink for purposes of cleaning equipment and blender bowls; (7) the storage shelves and storage containers contained an excessive amount of dirt build-up; (8) two of the three required blender bowls were not operable and no blender bowl

brushes were available for cleaning the only available, but damaged, blender; (9) the walls at the Store were dirty and damaged; (10) Defendants were not storing the required cleaning chemicals and, instead, were utilizing unauthorized household cleaning chemicals such as bleach.

38.     By letter dated February 7, 2011, and in accordance with the Franchise Agreement, SKFI notified Defendants that the Franchise Agreement was terminated due to the imminent danger the Store presented to the public health and safety and demanded that the Store be immediately closed.

## Termination

39.     Terminated franchisees are prohibited from identifying themselves as either current or former SMOOTHIE KING® Franchisees, from using any of SKFI's trade secrets, promotional materials, the SKFI Marks or any mark confusingly similar. Terminated franchisees are further required, upon termination or expiration of their SMOOTHIE KING® Franchise Agreement, to immediately make such removals or changes in signs and the building as SKFI shall request so as to effectively distinguish the building and premises from its former appearance and from any other SMOOTHIE KING® Store.

40.     In violation of the Franchise Agreement, Defendants have continued to hold themselves out to the public as operating a genuine and authorized SMOOTHIE KING® Store by continuing to use the SKFI Marks at the Store subsequent to the Franchise Agreement's termination. In so doing, Defendants are infringing upon the SKFI Marks and breaching their explicit obligations under the Franchise Agreement.

41.     Additionally, Defendants have not returned the Manuals to SKFI as required by the Franchise Agreement.

## LIKELIHOOD OF CONSUMER CONFUSION AND DECEPTION

42.    Defendants have not tendered to SKFI or removed all SMOOTHIE KING® signs, logos, menu boards, posters, uniforms, cups and other items bearing the SKFI Marks, name, symbols or slogans, or which are otherwise identified with SMOOTHIE KING® Stores and are located at the Store.

43.    Defendants' continued use and display of the SKFI Marks or any items associated with the SMOOTHIE KING® name, symbols or slogans at the Store is without SKFI's license or consent, and has caused or is likely to cause mistake, confusion or deception in the minds of the public as to source, affiliation and sponsorship.  Upon seeing the familiar SKFI Marks, through Defendants' unauthorized use thereof, consumers will be deceived into concluding that the products and services sold at the Store are made or supplied by SKFI, are prepared in the prescribed SKFI manner and subject to SKFI's supervision, are sponsored or endorsed by SKFI, and bear the SKFI Marks pursuant to SKFI's authority and permission.  Such impressions are calculated to and will have a material influence on customers' purchasing decisions, inducing them to patronize the Store in reliance on the goodwill, reputation and appeal of SKFI.

44.    By reason of the foregoing, SKFI has suffered damages, in an amount presently unknown yet substantial.  SKFI no longer is the source or sponsor of the Store and does not endorse said Store, or the products and services provided therein, has not authorized Defendants to use the SKFI Marks to identify the terminated franchise facilities, products or services, and has protested expressly against such use.

45.    By virtue of termination of the Store, SKFI is unable to control the nature and quality of the goods and services that Defendants provide at the Store.

46.    SKFI will suffer serious, immediate and irreparable harm if Defendants' willful

infringement of the SKFI Marks is not immediately enjoined. SKFI's goodwill and reputation will suffer drastically by virtue of the public's identification of SKFI with the management and operation of the Store. SKFI exercises strict quality control over every phase in the marketing of SMOOTHIE KING® products and services, from specification of ingredients, to the supervision of food preparation and handling, to the maintenance of strict standards as to cleanliness, health, sanitation and quality of service. The carefully nurtured image which SKFI now enjoys will be irretrievably injured by any association with the Store, which no longer is subject to SKFI's control and supervision.

47.    Defendants' sale of products and services under the SKFI Marks at the Store poses an immediate threat to the distinct, exclusive image SKFI has created at great expense for its franchisees. SMOOTHIE KING® Stores, services and products are known by the SKFI Marks which are emblematic of their distinctive source. SMOOTHIE KING® Stores enjoy a special appeal to consumers which will be diluted by the existence of infringing stores with products and services bearing the distinctive SKFI Marks. The intangible, but commercially indispensable, value that the SMOOTHIE KING® Stores now enjoy will be severely undermined by the operation of the Store, which makes unauthorized use of the SKFI Marks.

48.    Consumer confusion as to the source or sponsorship of a store bearing the SKFI Marks will be attended not only by an inevitable loss of product distinctiveness, image and goodwill, but will also cause a diversion of sales from SKFI. The economic injury to SKFI resulting from such diversion is incalculable and, as such, is an additional source of irreparable harm.

## COUNT I - LANHAM ACT INFRINGEMENT
## (AGAINST DEFENDANTS)

49.    SKFI re-alleges Paragraphs 1 through 48 above as if fully set forth herein.

50.    Defendants' acts constitute infringements of SKFI's registered trademarks and service marks in violation of Section 32 of the Lanham Act, 15 U.S.C. 1114.

### COUNT II - LANHAM ACT FALSE DESIGNATIONS
### (AGAINST DEFENDANTS)

51.    SKFI re-alleges Paragraphs 1 through 48 above as if fully set forth herein.

52.    Defendants' acts constitute false designations of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a).

### COUNT III - COMMON LAW TRADEMARK INFRINGEMENT
### (AGAINST DEFENDANTS)

53.    SKFI re-alleges Paragraphs 1 through 48 above as if fully set forth herein.

54.    Defendants' acts constitute unlawful trademark and service mark infringements under the common law.

### COUNT IV - COMMON LAW UNFAIR COMPETITION
### (AGAINST DEFENDANTS)

55.    SKFI re-alleges Paragraphs 1 through 48 above as if fully set forth herein.

56.    Defendants' acts constitute unfair competition under the common law.

### COUNT V - BREACH OF THE FRANCHISE AGREEMENT
### (AGAINST HEI)

57.    SKFI re-alleges Paragraphs 1 through 48 above as if fully set forth herein.

58.    HEI's has breached the Franchise Agreement by operating the Store in a manner constituting a threat and danger to the public health and safety. This breach has directly and proximately caused loss and damage to SKFI.

59.    HEI's operation of the Store after its immediate termination on February 7, 2011 is also a breach of the Franchise Agreement. These breaches have also directly and proximately caused loss and damage to SKFI.

## COUNT VI - BREACH OF THE GUARANTY
### (AGAINST DOSANI AND AHMAD)

60.    SKFI re-alleges Paragraphs 1 through 59 above as if fully set forth herein.

61.    Pursuant to the Guaranty, Dosani and Ahmad jointly, severally, unconditionally and irrevocably guarantied each and every term, covenant and obligation of HEI to SKFI under the Franchise Agreement, including the obligation to ensure that HEI operates the Store in a manner not causing a threat and danger to the public health and safety.

62.    The failure of Dosani and Ahmad to ensure that HEI operated and maintained the Store in a safe manner not causing a threat and danger to the public health and safety constitutes a breach of the Guaranty, and said breach has directly and proximately damaged SKFI.

63.    Dosani and Ahmad have further breached the Guaranty by virtue of their failure to ensure HEI's compliance with the Franchise Agreement's post-termination covenants, and that breach has directly and proximately caused damage to SKFI.

## DEMAND FOR ATTORNEYS' FEES

64.    The Franchise Agreement at issue in this litigation provides that the prevailing party is entitled to its attorneys' fees and costs. Pursuant to that provision, SKFI hereby demands that it be reimbursed by Defendants for all costs and expenses (including attorneys' fees) relating to prosecution of this action.

WHEREFORE, Smoothie King Franchises, Inc. demands judgment against Defendants, Hartan Enterprises, Inc., Mohammad H. Dosani, and Tanweer H. Ahmad, jointly and severally:

1.    For a temporary restraining order, preliminary injunction and permanent injunction enjoining Defendants, and all persons acting on their behalf, in concert with them, or

- 13 -

under their control, from:

(a)    manufacturing, packaging, distributing, selling, advertising, displaying or promoting any product or service bearing any of the SKFI Marks, or any colorable imitation thereof at the Store;

(b)    displaying or using any of the SKFI Marks to advertise or promote the sale of, or to identify, the Store, or any product or service provided therein; and

(c)    making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that Defendants, the Store and the products and services provided therein, are in any manner, directly or indirectly, associated, affiliated or connected with, or licensed, sponsored, authorized or approved by SKFI.

2.    For a temporary restraining order, preliminary injunction and permanent injunction directing Defendants, and all persons acting on their behalf, in concert with them, or under their control, to:

(a)    recall and deliver up to SKFI all signs, banners, labeling, packaging, advertising, promotional, display, and point-of-purchase materials which bear, or make reference to, any of the SKFI Marks, or any colorable imitation of the SKFI Marks;

(b)    recall and deliver up to SKFI all copies and editions of the Manuals that are in their actual or constructive, direct or indirect, possession, custody or control, including all supplements and addenda thereto, and all other materials containing store operating instructions, store business practices, or plans of SKFI;

(c)    allow SKFI, at a reasonable time, to enter the premises of the Store and make whatever changes, including removal of tangible assets, that are necessary to distinguish

the premises from their appearance as a SMOOTHIE KING® Store;

(d)    account and pay over to SKFI all gains, profits and advantages derived by Defendants from their trademark and service mark infringement, breach of contract, and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. §1117, and by the controlling principles of common law.

3.    For money damages, plus three times additional actual damages SKFI has sustained by reason of Defendants' trademark and service mark infringement, breach of contract, and unfair competition, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

4.    For punitive damages because of the willful nature of Defendants' actions;

5.    For pre-judgment interest and SKFI's reasonable attorneys' fees incurred in protecting its rights in this action in accordance with the terms of the Franchise Agreement and, because of the willful nature of the infringement, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

6.    For an order enjoining Defendants from operating a business that distributes, markets or sells, at wholesale or retail, any nutritional drinks or general nutrition products, or any other related business that is competitive with SKFI, within a five-mile radius of the Store for a two-year period;

7.    For an order directing Defendants to file with the Court, and to serve on SKFI's counsel within ten days after service of any injunction or order issued herein, or within such a reasonable time as the Court shall direct, a report, in writing and under oath, setting forth in detail the manner in which Defendants have complied with such injunction or order;

8.    For all costs, disbursements, and expenses of this action; and

9.    For all such other relief as this Court may deem just and proper.

Dated this 7th day of February, 2011.

Respectfully submitted,

/s/James M. Garner

Leopold Z. Sher
lsher@shergarner.com
Louisiana Bar No.: 12014
James M. Garner
jgarner@shergarner.com
Louisiana Bar No.: 19589
Sharonda R. Williams
swilliams@shergarner.com
Louisiana Bar No.: 28809
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112-1033
Telephone: (504) 299-2100
Facsimile: (504) 299-2300

GENOVESE JOBLOVE & BATTISTA, P.A.
4400 Bank of America Tower
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

Michael D. Joblove
(*Pro Hac Vice* application pending)
Florida Bar No.: 354147
mjoblove@gjb-law.com
Nina Greene
(*Pro Hac Vice* application pending)
Florida Bar No.: 072079
ngreene@gjb-law.com
Jorge L. Martinez
(*Pro Hac Vice* application pending)
Florida Bar No.: 735507
jmartinez@gjb-law.com

**ATTORNEYS FOR SMOOTHIE KING
FRANCHISES, INC.**